Good morning, Your Honors. Karen Zwick on behalf of Petitioner Yoselin Martinez-Cazun, who is here in the courtroom today. Your Honors, I'd like to reserve three minutes of my time for rebuttal, if I may. Thank you. Your Honors, my client meets the definition of a refugee. She was raised... I think we all agree on that. Where did I get you? Excuse me? I think we all agree that she meets the definition of a refugee because of fear of future persecution and past persecution. But where did I get you under what appears to be a conflict in the statute? Right, so I just wanted to begin there to make sure that it was clear that that is not actually the question before this court. The question here is how to resolve the statutory conflict between 1231A5, the reinstatement provision, and 1158, the asylum statute. The one thing that I do think is important about her past harm is that it occurred after her initial removal order. In other words, under 1158A2D, she should be allowed to seek asylum for a second time based on a successive application. She got reinstatement of removal. If she had not, if she had not had it reinstated, but asked for them just to issue another removal order, she wouldn't be in this predicament, would she? Your Honor, there's no way really to do that at the southern border of the United States. If you come into the United States and you... If you come in as Ms. Martinez did, you can't. The statute says that you shall be reinstated and that you shall not be allowed to seek relief other than withholding a removal. Because it does seem like this situation is not what the extreme reinstatement provisions are meant to address. And she went, she complied, was removed, and then the changed circumstances situation would have given her a way out but for the reinstatement provision. Exactly, Your Honor. And I think that that gets to sort of the heart of this case, which is what to do about these two statutes which are in conflict. I mean, we have one that directly applies that says for full consideration of the request for withholding of removal only, only, how do we undo that specific provision? How do we say it doesn't apply here? You're referring, Your Honor, to the language in the regulation. I think that this Court should try to first resolve this question at the statutory level. Those regulations, I don't think, are worthy of this Court's deference because they were not. Well, then address at the statutory level. It may not apply, not eligible, it may not apply for any relief under this chapter. And the only reason I went to the regulations is there's some play there. Sure, so the problem here is that the government is asking the term relief to do quite a lot of work for its position. The term relief in the reinstatement bar is not defined. It is not defined in the INA. It's not defined in the regulation. But asylum has to be relief. Are you saying that asylum is not put within the definition of relief? What I am saying, Your Honor, is that the term relief is used inconsistently within the text of the INA. Well, you don't have to answer Chief Judge McKee's question. Are you saying that asylum is not included in the term relief? I think for purposes of If it's not relief, why do so many people seek it? I think it's more accurately defined as a term of protection. What's the difference? Why wouldn't protection from removal be relief? That's what people want. Right, that's what I was getting at, Your Honor, when I was saying that it was used inconsistently. I think sometimes relief is used as a broad catch-all term to define all kinds of immigration remedies. And at other times, there are points in the between forms of relief that are relief and protection, using the phrase relief or protection. And what our position is and our solution to this problem is that if this Court were to agree that asylum is a form of protection and construe 1231A5 in a way that excluded forms of protection from the term relief in 1231A5. But then you say withholding of removal is a form of protection. CAT is a form of protection. So you're reading every type of What other relief is there that isn't protection? Many forms. Adjustment of status, cancellation of removal, and in fact just to... What other cancellation of removal may be relief? Protection. Our position is that protection refers to... forms of protection are things that are international treaty based. So our position would recognize that asylum withholding of removal and protection against torture. Isn't anything in the Chapter 12 based upon UN protocol? Sorry? The entirety of Chapter 12 of the INA based upon UN protocol? No, Your Honor. What is it? There are lots of forms of immigration relief that are not... What are you talking about? Cancellation of removal, temporary protected status, adjustment of status. Why would they need a regulation that permits an individual subject to reinstated removal order to seek CAT? Why would you need a regulation that would permit that? Because CAT is a protection as far as you're concerned, is it not? I think that the problem with the statute and the issuance of those regulations is actually an illustration of the problem with the statute, which is that if you take the word relief to mean quite the broad thing that the agency is saying that it means, it excludes things like withholding of removal and protection under the Convention Against Torture. Your Honor, what I would say that the agency did when it carved those out with the regulations is that it recognized that there was a conflict between the international treaty obligations under the Convention Against Torture and it created an exception to deal with that conflict. The problem is that the agency... There are other international treaty obligations under the Refugee Convention that were not addressed at that moment with respect to asylum. I'm not sure where the conflict would be because under subsection 5 of the statute, of Chart 31, it simply means that the person is not eligible for asylum but they're eligible for other kinds of, quote, relief that would preclude them from going back to the country where they're going to be persecuted. They could go to a third country as long as there's some assurance that that third country is not going to subject them to persecution. So why wouldn't that be a kind of relief? I'm not following you. Your Honor, what you're referring to are withholding of removal and protection under the Convention Against Torture. Those are relief from the sort of most fundamental issue with our international treaty obligations, return to a place of persecution, to a home country where you would suffer persecution. But there are a whole lot of other rights and remedies that individuals are able to receive under asylum and that's why this case matters. But those other rights, that's not part of the UN treaty. That's more statutory. The fact that someone, whether or not someone who is here, is able to work. I'm not sure the UN protocol gets into that kind of weedy detail. It does, Your Honor. Actually, let me, I can refer you to the specific provision. If you're going to take your time now, do a 28-year letter and submit that. Okay, sure. So there are a lot, the fundamental point that I'm trying to make on this issue though is that there are a number of rights that are afforded to asylum seekers and asylees through 1158 and through the eventual adjustment of status that is available to asylees that are not available in withholding of removal. And that's why this case matters and that's why the... All that does is explain why you would rather get asylum than withholding. But it doesn't help us answer the statutory question, does it? It doesn't help. Well, I think it's relevant to the statutory question because those other rights are treaty-based and one of the principles of statutory construction is that the court should construe the statute in a manner consistent with international treaty obligations. Are you saying that if we construed any relief in 1231A5 the way that the Fifth Circuit has and other circuits have, that we would be doing so inconsistent with treaties? The Fifth Circuit did recognize the difference between protection and relief, but the problem with the Fifth Circuit's analysis is that they put withholding and removal on the wrong side of that line. The Fifth Circuit actually, in some respects, came to that conclusion. I know what they did, but I'm not sure you answered my question. Are you saying that if we... that those decisions and if we were to follow those cases that we would be doing so in contravention of treaties? I think that those... Yes, I think that those cases... In what way? Because I'm not yet perceiving that. I'm not either. So, the Ninth Circuit case and the Fifth Circuit case addressing this issue, of course, found that the agency... that international treaty obligations require individuals to be able to have an unrestricted right to work, have an ability to travel abroad, have an ability... Ms. Martinez-Cazun is subject to yearly check-ins with immigration. She's in permanent limbo. She can't bring her child here. All of these are rights that are provided to individuals under the Refugee Convention. And they're self-executing? They're not... They're not self-executing. You've got the precatory issue you've got to deal with. They're not self-executing, but they are made available to people in the United States through 1158 and through the availability of adjustment of status after someone has been granted asylum. Ms. Martinez-Cazun cannot seek adjustment of status. As to the precatory language, Your Honor, I recognize that the Supreme Court said that that case does not answer the question here. In that case, all the Court was considering was the difference between the standard of review for asylum and withholding of removal. And because that was the question in that case, it held that the more likely than not standard that applies to withholding of removal was acceptable because that's a mandatory form of relief, whereas the well-founded fear standard that applies to asylum seekers is okay for asylum because it's discretionary. And if you're right about that, it also stands to reason that our decision in Marrinkus doesn't control here either, right? Because it was addressing a different question. I think that your decision in Marrinkus is a good starting point. I think it doesn't control because it is a different question and the statute has changed since then, but it's relevant. It doesn't control whether or not a minimum is still always there. But to the extent that it looked at a very similar kind of conflict within the statutory scheme and determined that any means any, why wouldn't it control on that issue? It does control. That's what I was about to say, Your Honor. This Court in Marrinkus said any alien irrespective of status is clear and unambiguous language and that language is still present in 1158 today. And by the way, it's not the only statutory clue that exists within 1158 that suggests that the limits on asylum are meant to be within the four corners of that statute. Would you urge that 1158A, 2, C, and D make clear that this situation is different from your normal reinstatement? In other words, it anticipates an original denial, which to me would then bring about a removal order. And then a subsequent application, which can be granted, which assumes I had guessed that there would be a reinstatement of removal, but allows, if there's changed circumstances, to be considered for asylum. So you draw a, well, normally this is that we'd agree with the Ninth Circuit, but we have an unusual fact pattern here. We do have an unusual fact pattern, and of course the Ninth Circuit recognized the difference between their fact pattern in Perez-Guzman and this one on that basis. I don't think that that is necessarily the only, I don't think that you should reach a decision that's only based on changed circumstances because there are other clues within 1158 that counsel against using the reinstatement statute is a limit on asylum. That's not the only clue in the statute. I see that my time is up. I can reserve the rest for rebuttal, unless you have another question. Well, finish your answer with that, and then we'll hear rebuttal. Okay. So what I was getting at, Your Honor, and I do want to just reiterate that there's lots of work for reinstatement to do besides this individual case. In the last fiscal year for which the numbers are available, 170,000 people were reinstated and less than 5% of them would be affected by this issue, even if you include all of the folks, not just the ones who are coming back. Is this responsive to the question, or is this kind of pre-rebuttal rebuttal? I was just saying that it's responsive, I think it's responsive in the sense that I was trying to say that it's not just all, it's not just this limited group. But I can sit down now. Okay. Thank you. Good morning, Your Honors. I think you're on the wrong table, I was confused about that. Go ahead. Good morning, Your Honors. May it please the Court, I'm Carnell Morgan on behalf of the respondent, the U.S. Attorney General. It's the government's position that the reinstatement statute is clear on its face and the plain language precludes aliens with a reinstated removal order. Why isn't 1158 clear on its face? 1158 says any alien. My vocabulary is not all that great, but I understand any, and I understand alien. And then it says irrespective, and that's getting polysyllabic, but I still know what it means. Irrespective of such alien status. And then we're back to monosyllabic words, which are easy to get. They apply for asylum. Why isn't that really clear on its face? Any alien who is physically present, irrespective of such alien status, may apply for asylum in accordance with, I don't know, how could it be incurrent in that? Well, there are a number of reasons, Your Honor. One, the title of the subsection says, in general, and the asylum statute itself. And Congress did not enact the title? Some matter, some went after the title, and in fact I think it said the Chief Justice cautioned the lawyer about relying upon the title of the statute as opposed to the text of the statute. I have some other reasons as well, Your Honor. Okay. The good reasons, right? Yes. Okay. The asylum statute itself has, I'm counting, nine exceptions to when persons are not able to apply for asylum or must be mandatorily denied asylum. And I count two invitations for regulations on behalf of the Attorney General to further limit asylum. None of those exceptions include reinstatement bar, is that correct? I would argue that that's incorrect, Your Honor. Well, in subsection two, there are a number of exceptions listed, and I'm looking at them now, and I don't see any of them change circumstances of one previous asylum application, timing of the filing. I don't see any of them as it goes to Judge Rendell's question. Ah, yes. It's not specifically enumerated, but under 1158B2C, there is language saying that the Attorney General may by regulation establish additional limitations and conditions consistent with this section under which an alien shall apply. But consistent would be inconsistent because it's not an enumerated exception. Consistent is important. Consistent with this section under which an alien shall be ineligible for asylum under paragraph one. It would be a regulation that creates a new exception, and we don't usually allow agencies to do that. I don't understand why that exception isn't an additional limitation or condition. Because it's got to be consistent with it. Subsection one says any alien physically present irrespective of their status, and then there are statutory exceptions written into 1158, none of which go to what was done by regulations to carve out a whole new categorical, I hate that word, categorical list of exceptions. A whole new category of exceptions was created by regulation, not by Congress. Congress empowered the agency to promulgate regulations, but it did not empower the agency to overrule or contradict. But Congress didn't look at it. I guess it could, it could put language in the statute saying that. The reinstatement provision itself does that, which Congress wrote. And the government's position is that the reinstatement statute is the more specific and therefore governs the situation. It addresses a very narrow specific subclass of persons who reenter the United States without permission and have their prior order of removal reinstated. It's not that narrow. It's a whole lot of people. It's tens of thousands of people. Well, there's a difference between physical numbers and the category being narrow. But I agree, it's a lot of people, yes. So that sort of goes to the heart of your argument. There's this dispute where both, each side is claiming that your favorite statute is more specific than the other. So your argument is that, you know, if you pass a law that applies to brown-eyed people, it might include a lot of people, but brown-eyed is pretty specific. That's correct, Your Honor. All right, but what about this issue of relief versus protection? I mean, frankly, I'm not persuaded by either of your arguments. You're picking and choosing what's relief and what's protection. I mean, why isn't it all relief? You're saying cap, protection, withholding of removal is not relief? I mean, withholding of removal is almost as good as it gets, right? For a person who's been subjected to persecution? I mean, they'd like to get asylum, but withholding is pretty good. Why isn't that relief? I think the best answer, Your Honor, is that when you have withholding of removal granted or protection under the Convention Against Torture, under those circumstances, the immigration court still issues an order of removal. So it's not relief from removal. They can remove you, and the petitioner in this case is subject to a valid removal order at this time. She just can't be removed to a specific country. All right, but isn't that just another way of saying it's relief that's not quite as good as asylum? But it's still relief, isn't it, in the normal understanding of the word relief? I would say no, Your Honor. The government's position is that it isn't. It's just protection. It's protection. That's correct. Help me with my wink. I'm looking at the opinion. Things are debatable at this. But in the opinion, he talks about U.S. treaty obligations, and there's a specific part where he quotes the U.N. protocol, and it says the U.N. protocol provides no contracting party shall expel or return – I pronounce it with a vowel, it may well have a French pronunciation – a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of, and then it gets into the categories  Why wouldn't any, as incorporated in Le Brefier, and if we look at any to mean really any, really any, not just kind of pretend any, and to bring your argument to me, it's kind of any with a wink. Yes. Why wouldn't what we say in Marinkus basically say any means any, that there's a treaty obligation that under the U.N. protocol relating to the status of refugees, Article 33, that would preclude us from reading the conflict, and there is a conflict within the statute, in the way that you originally would read it. Well, the Fifth Circuit, I think, addressed this question. But they didn't have Marinkus. Well, they didn't have Marinkus, but… Maybe we defied them that way. What advantage? We're very lucky. We have Marinkus. We have to follow. We have the very broad word any in both the asylum statute and the reinstatement provision. We have the U.S. Supreme Court's decision in Cardozo-Fonseca, which explains that our treaty obligation is not to remove persons to that specific country, which withholding of removal satisfies. Asylum goes beyond that obligation. Okay, well, that answers the Marinkus question. It doesn't answer the 1158 question in terms of any form of relief. And there's still some tension there. Now, is your position that relief does not include asylum?  It does definitely include asylum. Because protection is included in relief. I think they're two separate things, Your Honor. Okay, well, then, aren't you saying that it may not apply for any relief under this chapter? If asylum is protection and not relief, then it doesn't apply? It's really the appellant's argument, is it not? It's not. All right, explain to me, then, how any relief includes asylum if you believe it's protection. Because they're not the same thing. All right, so you're saying the restatement bar doesn't apply to asylum? Oh, it does. All right, I'm confused. Asylum is relief. Pardon? Asylum is relief, so asylum is relief. Withholding isn't, and cat protection isn't. Oh. So to say. Okay, all right. I'll ask you the same thing I asked your colleague, and that is that 1158C or A to C and D seem to anticipate a situation like this more than the reinstatement bar does. It seems to me the reinstatement bar is to toe the hard line. If somebody comes back in, they've been thrown out once before, they're back in here, what are we going to do? You're not allowed to get any relief. Here we have a situation where she was ordered to remove because it wasn't severe enough, if you will. She left voluntarily. She left voluntarily? I thought that was in the record. You're making a face. I think she left under a removal order. Okay, but they didn't come and haul her away the way most people who are going to try to dodge it do. She goes to Guatemala, she has changed circumstances, wants to come back and show it that she's entitled, and under 1158A to D she would be entitled to be considered for asylum. Why should we say the reinstatement bar is meant to apply in this situation when Congress is clearly, or at least when there are regulations clearly that would allow someone in her situation to apply for asylum? The difference there is the illegal re-entry. And I would like the court to be aware that there is... What's she supposed to do? Come to the border and don't get on the raft and go over the Rio Grande. But come to the border, don't illegally re-enter and announce that you're seeking asylum. And under those circumstances the reinstatement bar can't apply because you haven't illegally re-entered. Wow. That was exactly the word that I was going to use. Wow. So she's got to know to say the magic words. I think that she was... No, I think I know that when she was removed she was given paperwork that tells her you're barred from re-entering the United States for five years and sets forth the very serious consequences that come from that. It says that you need to have advanced permission to enter the United States. Are there actually places where someone who would like to declare asylum can present themselves and ask for that relief? You can do so at the border. You could contact the Department of Homeland Security through an embassy or council. That's not really practical. I mean, are there... It may not be a mistress. Are there... You know, I haven't spent any time on the border so I don't know, but are there... Are there entry posts where people can... I mean, I see a lot of cars crossing in through into California, right? Yes. Can somebody walk up on foot and say, could I speak to... I need asylum. Yes. Does that actually happen or is that some sort of theoretical fantasy? No, I believe it does happen. She came to the United States once before, actually about two months prior, and presented a fake visa that she had purchased. All right, so instead of... She knew how to find immigration offices at the border. All right, so she spends 300 pesos to get a fake, which I guess is like $15, is that right? I'm not sure about the conversion rate. All right, so she spends 300 pesos, gets a fake document and presents herself. If she didn't present the fake document and presented herself to the same person, could she have asked for asylum and then gone through the process of getting an interview with an asylum officer then being referred to an I.J. and all that? As I understand it, that's correct and a sort of similar process actually occurred because she didn't have a prior removal order. She was placed in expedited removal proceedings and had asylum available to her but it was denied the first time. Wait, she never had an initial removal order? She did, yes. After the first time. We're talking about the first time. When she initially entered... Am I remembering correctly from another case we handled that the folks that appear and get put into expedited removal, something like 80 plus percent of them actually get a well-founded fear finding or am I misremembering that? I really don't know the statistics on that. I'm sorry. If you'd like me to research that... No, I'm not sure it helps us decide this case. This is really not... It's changed circumstances in that the second time she was deemed credible at the improvement and the first time I would like to say it boggles my mind it doesn't. I've seen too many of these cases where someone is deemed not credible because they react to an interview in a manner that almost anybody in the life of someone would react. They don't disclose the fact that they've been viciously attacked and raped especially coming from a culture where admitting something is not necessary you just don't do it. So they don't admit it as I said most people wouldn't. So they don't   said        said  wouldn't. So they don't admit it as I said most people wouldn't. So I think it boggles my mind and I do understand the concern I think the concern particularly when you look at the American Immigration Lawyers Association amicus brief is persons who are in expedited removal proceedings and don't or don't have their asylum claim listened to they don't ever get that but that's this case really illustrates the opposite she was given multiple opportunities to tell her story and in fact does get a form of protection which prevents her from having to go back to Guatemala the very country that she fears and you say that is relief no withholding or cap is protection not relief correct your honor so but the legislative history doesn't specifically address the question my guess would be the agency believes that relief includes withholding and cap that's one possibility the other possibility is that the regulations address the procedure and they do by which someone can be granted withholding and protection and so it was procedure would constitute relief to me you're saying that procedural remedies are not relief if you tell somebody who just received at the end of a penalty case a sentence of death but we're not going to give you we would like to give you a new sentencing hearing but it's a kind of protection but we're not going to look at that as relief you would not make that argument the new sentencing hearing would be from relief the person may well be spared from being executed I don't understand why I don't agree with your position that relief applies only to asylum do you lose the case no again I think you look at the regulation which is very clear I don't even know why I don't agree with   that relief applies only to asylum I don't agree with your position that relief applies only to asylum I don't agree with your      to    agree with your position that relief applies only to asylum I don't agree with your position that relief I don't agree with  position  relief applies